UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,                    Case No. 3:22-cr-155

        Plaintiff,

v.                                      MEMORANDUM OPINION
                                           AND ORDER

Shumar Holiday,

        Defendant.

## I. INTRODUCTION

Defendant Shumar Holiday seeks to suppress evidence seized during searches of a storage unit and a hotel room. (Doc. No. 21). The government filed a brief in opposition to the motion, (Doc. No. 26), and Holiday has filed a brief in reply. (Doc. No. 27). I held a hearing on the issue of whether Holiday had standing to pursue his Fourth Amendment challenge on August 31, 2023. I also granted leave to the parties to submit post-hearing briefing, which they have since filed. (Doc. Nos. 32, 34, and 35). For the reasons stated below, I deny Holiday's motion.

## II. BACKGROUND

In June 2021, during the course of a narcotics investigation, Federal Bureau of Investigation Special Agent Kyle Fulmer interviewed two individuals who purchased heroin and fentanyl from an man named Jeffrey Brightman in the Findlay, Ohio area and later assisted Brightman with distributing those drugs in northwest Ohio ("SOI-1" and "SOI-2"). (Doc. No. 24 at 3-4) (filed under seal). Both individuals told Fulmer that Holiday, also known as "G," supplied Brightman

with heroin and fentanyl for distribution. SOI-2 reported witnessing Holiday and Brightman with three kilograms of heroin and fentanyl in the late summer or early fall of 2020. After Brightman was arrested in October 2020 in an unrelated case, SOI-1 drove Holiday around northwest Ohio while he sold drugs to customers. SOI-1 observed Holiday deliver large quantities of heroin and fentanyl on several occasions. Both individuals also told Fulmer that another man, John Douglas Sturdevant, distributed drugs in the Toledo area for Holiday before and after Brightman's arrest.

Subsequently, in October 2021, Fulmer began working with a cooperating source ("CS-1"). CS-1 had informed investigators that Holiday, who CS-1 knew as "G," was distributing heroin and fentanyl in the Toledo and Findlay areas. CS-1 participated in at least nine controlled purchases of illegal narcotics from Holiday, Sturdevant, or both between November 2021 and March 2022. (Doc. No. 24 at 5-10).

Investigators also utilized GPS tracking devices, wiretaps on Holiday's cell phones, and other investigative techniques to monitor Holiday's and Sturdevant's movements and communications. (*Id.* at 10-11).

On March 11, 2022, Fulmer sought a search warrant for four properties connected to the investigation: a storage unit located on Jackman Road in Toledo; a hotel room located on Hagman Road in Toledo; an apartment in Perrysburg, Ohio, rented by Holiday's girlfriend; and Sturdevant's residence on Beaumont Drive, in Toledo. (*Id.* at 1). Magistrate Judge Darrell A. Clay approved Fulmer's request on the same day.

Investigators executed the search warrant at all four locations on March 15, 2022. At the Jackman Road storage unit and the Hagman Road hotel room, they recovered, among other things, narcotics, drug paraphernalia, firearms, and ammunition.

After Holiday was indicted, he moved to suppress the evidence obtained pursuant to the search warrant, arguing the searches violated his Fourth Amendment rights because the search

warrant affidavit failed to establish sufficient nexus between the places to be searched and the alleged misconduct and further that the evidence contained in the search warrant affidavit was stale. (Doc. No. 21). After the government challenged his standing to challenge the search, I held a hearing, at which four witnesses testified – Fulmer; Holiday; Christene Rayfus, Holiday's mother; and Shameka Rayfus, Holiday's sister. (Doc. No. 31). The parties have now submitted their post-hearing briefs.

### III.  ANALYSIS

#### A.  STANDING

A defendant who challenges the admissibility of evidence obtained pursuant to a search warrant first must show he has "a legitimate expectation of privacy in the place searched or the thing seized." *United States v. King*, 227 F.3d 732, 743 (6th Cir. 2000) (citing *Katz v. United States*, 389 U.S. 347, 353 (1967)) (further citations omitted). Courts must determine (1) whether the defendant exhibited an actual expectation of privacy by seeking to preserve something as private, and (2) whether the defendant's expectation of privacy is "one that society is prepared to recognize as reasonable." *Bond v. United States*, 529 U.S. 334, 338 (2000) (citation and quotation marks omitted).

In making these determinations, courts may consider "the person's proprietary or possessory interest in the place to be searched or item to be seized[;] . . . whether the defendant has the right to exclude others from the place in question; whether he had taken normal precautions to maintain his privacy; whether he has exhibited a subjective expectation that the area would remain free from governmental intrusion; and whether he was legitimately on the premises." *King*, 227 F.3d at 744 (citations omitted).

The government contends Holiday does not have standing to challenge the search warrant because the Hagman Road hotel room and the Jackman Road storage unit were rented by third parties. (Doc. No. 21 at 7). The government further argues that Holiday's possession of a key to

3

those locations "does not equate to a legitimate expectation of privacy," and that Holiday abandoned any privacy interest in the Hagman Road hotel room when he broke a window and fled the room when agents executed the search warrant. (*Id.*). I do not find these arguments persuasive and conclude Holiday has standing to challenge the search warrant as to both properties.

1. **Storage Unit**

I begin with the storage unit. Holiday's sister, Shameka Rayfus, testified she rented this storage unit as a place for Holiday to store his things after Holiday moved out of a residence he shared with the mother of one of his children. (Doc. No. 31 at 37). Shameka stated that after she signed the rental agreement, she gave the only key to Holiday and that Holiday paid the monthly rent for the unit. (*Id.*). Shameka did not go into the storage unit or put any of her belongings in it.[1] (*Id.* at 37, 41-42).

As Holiday notes, the United States Court of Appeals for the Sixth Circuit has held a defendant has a legitimate expectation of privacy in property stored in a locked storage unit, even if others also have access to the storage unit. *Garcia v. Dykstra*, 260 F. App'x 887, 892-93 (6th Cir. 2008). *See also United States v. Salgado*, 250 F.3d 438, 456 (6th Cir. 2001) (quoting *United States v. Lyons*, 898 F.2d 210, 213 (1st Cir. 1990), for the proposition that a defendant who placed personal property inside a storage unit "'manifested an expectation that the *contents* would be free from public view'") (emphasis in original). I conclude the fact that Shameka rented the storage unit in her name does not preclude Holiday from establishing that he has standing to challenge the search of that unit.

---

[1] The government suggests Holiday fails to establish he has standing to challenge the search of the storage unit because Shameka "never testified that [the storage unit she rented for Holiday] was the same unit at issue in this case." (Doc. No. 34 at 2). While perhaps technically true, Shameka's failure to expressly connect these two particular dots has no impact on Holiday's motion, in no small part because the government has produced an account statement from the Jackman Road storage facility bearing Shameka Rayfus's name. (Doc. No. 26-4). Thus, there appears to be no dispute that the locations are one in the same.

Next, the government argues the fact that the storage unit "was used exclusively for illegal purposes weigh[es] heavily against any reasonable expectation of privacy." (Doc. No. 34 at 3). But, as Holiday notes, the Sixth Circuit has held "the legality of a person's possession cannot be the lynchpin of their Fourth Amendment standing." *United States v. Carnes*, 309 F.3d 950, 960 (6th Cir. 2002). The question is whether Holiday had "a legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143 (1978) (emphasis added). Courts are to ask whether the defendant took "normal precautions to maintain his privacy[,] . . . exhibited a subjective expectation that the area would remain free from governmental intrusion[,] and . . . was legitimately on the premises." *King*, 227 F.3d at 744 (emphasis added).

Holiday had legitimate access to the Jackman Road storage unit and took "normal precautions" to privately store the items contained in that unit. That the storage unit contained evidence of a crime does not undermine the legitimacy of his subjective expectation that the contents would remain private. I conclude Holiday has standing to challenge the search of the Jackman Road storage unit.

### 2. Hotel Room

The government also argues Holiday does not have standing to challenge the search of the hotel room. While conceding the issue of Holiday's legitimate expectation of privacy in this location is "a close call," the government argues Holiday failed to establish he had the ability to control access to the room, that he was using the room with the lessee's permission, or that he was living in the room. (Doc. No. 34 at 4).

The Fourth Amendment generally requires law enforcement officers to obtain a search warrant before searching a hotel room. *United States v. Spicer*, 549 F. App'x 373, 376 (6th Cir. 2013) (citing cases). As I noted above, Holiday was not the named lessee of the Hagman Road hotel room

5

either.² But Holiday was given a key to the room by the lessee and paid the room rental rate. (Doc. No. 31 at 63).

Further, the evidence presented during the August 31 hearing established that Holiday regularly used the hotel room. Fulmer testified officers found clothing, shoes, toiletries, and "many personal belongings" in the room when they executed the search warrant. (*Id.* at 21). Shameka, Christene, and Holiday each testified that Holiday used the hotel room because someone shot at him in front of his previous residence and made death threats against him, and that he used the hotel room from November 2021 until his arrest on March 15, 2022.

The government contends Holiday abandoned any expectation of privacy in the hotel room when he attempted to flee from the room upon the arrival of officers serving the search warrant. (Doc. No. 34 at 4-5). But this argument is not persuasive. The evidence establishes Holiday was legitimately on the premises, using the hotel room as a residence, when officers arrived. The government does not suggest an individual who rented a house or apartment would forfeit any legitimate expectation of privacy in such a location simply by fleeing, and I see no substantial difference in these circumstances. *Cf. United States v. Foster*, 65 F. App'x 41 (6th Cir. 2003) (holding defendant, who fled the scene of a traffic stop of a vehicle of which he was not the registered owner, did not have a legitimate expectation of privacy in that vehicle).

In light of the evidence presented during the August 31 hearing, I conclude Holiday had a legitimate expectation of privacy in the Hagman Road hotel room and thus he has standing to challenge the search of that room.

---

² Holiday testified another man signed the rental agreement for the room and also had a key for the room, but that no one else had a key to the room. (Doc. No. 31 at 48-49, 59-64).

**B. SUPPRESSION**

The Fourth Amendment generally requires law enforcement officers to obtain a warrant, based upon probable cause, before searching a location in which an individual has a reasonable expectation of privacy. *See, e.g., Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018) ("When an individual 'seeks to preserve something as private,' and his expectation of privacy is 'one that society is prepared to recognize as reasonable,' we have held that official intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable cause.") (further citation omitted). Probable cause is the "reasonable grounds for belief" that evidence of a crime may be found in a certain place or location. *United Stated v. Lattner*, 385 F.3d 947, 951 (6th Cir. 2004) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). "Probable cause exists when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Loggins*, 777 F.2d 336, 338 (6th Cir. 1985) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

The principles underlying a court's probable cause review are familiar. The Fourth Amendment requires only that "the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." *Gates*, 462 U.S. at 236 (citation omitted) (alteration in original). An affidavit "should be reviewed in a commonsense – rather than a hypertechnical – manner, and the court should consider whether the totality of the circumstances supports a finding of probable cause, rather than engaging in line-by-line scrutiny." *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004).

Holiday contends the information contained in the search warrant affidavit was "stale" and therefore cannot support a finding of probable cause:

> Holiday was last seen at the storage unit on March 3, 2022. Affiant waited until March 11, 2022, to apply for the search warrant in question. Affiant then waited until March 15, 2022, to execute the warrant, some two weeks after Holiday's last visit to the storage unit and his last alleged sale. The same is true with respect to

7

> Holiday's room at the [Hagman Road hotel]. The evidence here related to the distribution of small quantities of drugs for personal use long before the search warrant was issued and executed; thus, the information about the controlled buys and purchases was too stale to be considered by the magistrate judge in his probable cause analysis.

(Doc. No. 21 at 12-13).

The probable cause inquiry involves a determination of whether evidence of a crime will be found in a particular place at the time a search occurs. Therefore, a judge evaluating information contained in a search warrant affidavit must consider "the 'unique problem of whether the probable cause which once existed has grown "stale."'" *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998) (quoting W. LaFave, Search and Seizure § 3.7 at 339 (3d ed. 1996)).

> A determination of whether an informant's tip is stale rests on several factors including the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), the place to be searched (mere criminal forum of convenience or secure operational base?).

*United States v. Hammond*, 351 F.3d 765, 771 (6th Cir. 2003) (citations and internal quotation marks omitted).

Like in *Hammond*, the information contained in the search warrant in this case was not stale: "the crime of drug trafficking is ongoing, the defendant's location is established, the drugs were likely to be there for an indefinite period of time, and the place to be searched constituted a secure operational base." *Id.* at 772.

The Defendants' drug trafficking operation was ongoing, as the search warrant affidavit connected Holiday and Sturdevant to trafficking in heroin and fentanyl since at least 2018 and contained evidence of regular narcotics transactions through March 11, 2022.[3]

---

[3] SOI-2 "specifically stated that he/she had previously been distributing quantities of heroin/fentanyl for . . . Brightman and HOLIDAY since before 2018." (Doc. No. 24 at 4). SOI-1, SOI-2, and CS-1 identified Holiday as the person they knew as "G". (*Id.* at 3-4).

The locations to be searched also were well-established. The warrant affidavit connected Sturdevant to narcotics transactions from the Beaumont property beginning as early as August 2021. (Doc. No. 24 at 4). It also connected Holiday to the Jackman Road storage unit as early as December 23, 2021, to the Hollister Drive apartment by January 28, 2022, and to the Hagman Road hotel room by February 15, 2022. (*Id.* at 6-8). Further, Fulmer averred that he had confirmed through witness interviews that Holiday had been at the Hagman Road hotel room and the Hollister Drive apartment less than a week prior to the submission of the warrant request. (*Id.* at 10-11).

In circumstances like these, where "'the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant.'" *United States v. Perry*, 864 F.3d 412, 415 (6th Cir. 2017) (quoting *Spikes*, 158 F.3d at 924) (further citations and quotation marks omitted). I conclude the evidence contained in the warrant affidavit was not stale and Judge Clay properly considered it.

Holiday also argues the warrant affidavit did not establish a sufficient connection between the crimes being investigated and the properties to be searched. The Fourth Amendment requires that a search warrant affidavit "state a nexus between the place to be searched and the evidence sought." *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998) (citation and internal quotation marks omitted). The Sixth Circuit has held "a nexus exists between a known drug dealer's criminal activity and the dealer's residence when some reliable evidence exists connecting the criminal activity with the residence." *United States v. Gunter*, 266 F. App'x 415, 419 (6th Cir. 2008) (citations omitted).

As the search warrant affidavit indicates, on December 23, 2021, CS-1 attempted to purchase fentanyl from Sturdevant. (Doc. No. 24 at 6). When Sturdevant did not have any, CS-1 called Holiday, who told CS-1 he was going to get more fentanyl for Sturdevant and would meet CS-1 in 20 minutes. Officers conducting surveillance of Holiday observed him go to the Jackman Road

9

storage unit and use a key to unlock the unit. (*Id.*). Holiday then met with Sturdevant before continuing on to meet CS-1 and providing CS-1 with fentanyl. (*Id.* at 6-7). Then, on February 15, 2022, and after another controlled purchase, officers followed Holiday from the scene of the purchase to the Hagman Road hotel, which Holiday entered. (*Id.* at 8).

Ten days later, on February 25, 2022, CS-1 again contacted Holiday about buying fentanyl. Officers then observed Holiday travel to the Jackman Road storage unit and enter it using a key. Holiday then went to the Hagman Road hotel before meeting CS-1 with fentanyl. (*Id.* at 8-9). Holiday took the same route on March 3, 2022. (*Id.* at 9). Fulmer stated, based on his training and experience, his belief that Holiday obtained the fentanyl from the storage unit, took it to the hotel room to weigh and package it, and then provided it to CS-1. (*Id.* at 9-10).

While Holiday argues his "travel to and from the storage unit and the Hampton Inn [was] entirely consistent with purely innocent conduct," the probable cause inquiry requires only a "fair probability," not a certainty, that evidence of a crime will be found in a particular place. *Loggins*, 777 F.2d at 338 (citation and quotation marks omitted). Further, Judge Clay was permitted to "'take into account the experience and expertise of law enforcement agents who observed the defendant's activity.'" *United States v. Van Shutters*, 163 F.3d 331, 338 (6th Cir. 1998) (quoting *United States v. Valencia*, 24 F.3d 1106, 1108 (9th Cir. 1994)). I conclude Judge Clay had a substantial basis, based upon the contents of the warrant affidavit, to conclude evidence of drug trafficking would be found in the Hagman Road hotel room and the Jackman Road storage unit.

Because I have concluded the evidence in the search warrant affidavit was not stale and that the affidavit established a sufficient nexus between the crimes being investigated and the properties to be searched, I need not consider the parties' alternate arguments regarding the application of the good faith doctrine.

## IV. CONCLUSION

For the reasons set forth above, I deny Holiday's motion to suppress. (Doc. No. 21).

So Ordered.

s/ Jeffrey J. Helmick<br>
United States District Judge

11